# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| FELD MOTOR SPORTS, INC. | § | |
| | § | |
| v. | § | CASE NO. 4:14-CV-543 |
| | § | Consolidated with |
| | § | |
| | § | CASE NO. 4:14-CV-463 |
| | § | Judge Mazzant |
| TRAXXAS, LP | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Traxxas, LP's Motion to Exclude Expert Testimony of Douglas Edwards (Dkt. #60), Plaintiff Feld Motor Sports, Inc.'s Motion to Strike Expert Report and Testimony of Sidney Blum (Dkt. #61), and Plaintiff Feld Motor Sports, Inc.'s Motion to Strike Expert Report and Testimony of Kevin Hetmanski (Dkt. #62).

## BACKGROUND

The present action concerns whether Traxxas, LP ("Traxxas") and Feld Motor Sports, Inc. ("Feld") contracted for royalties on the sales of the Stampede (Model No. 3605), as Traxxas contends, or whether the parties intended to include the entire "Stampede Lineup," which includes the Stampede (Model No. 3605), Stampede VXL (Model No. 3607), Nitro Stampede (Model No. 4109), Stampede 4x4 VXL (Model No. 6708), and Stampede 4x4 (Model No. 67044/67054) (Dkt. #60 at p. 2). The language in dispute is found in the Royalty Rate Clause of the License Agreement and states:

> 5. **Royalty Rate**: In determining the number of **Licensed Articles** on which Licensor will receive royalties, "**Licensed Articles**" shall be deemed to include **all R/C Vehicle Units and R/C Bodies** manufactured with the Stampede chassis and/or Stampede body, **whether or not branded with the Property or "Stampede."**

(Dkt. #60 at p. 2) (emphasis in original).

1

On December 31, 2013, Feld announced to Traxxas that it hired Comprehensive Royalty Compliance ("CRC"), led by Douglas Edwards ("Edwards"), to conduct a royalty audit (Dkt. #60 at p. 3). On March 13, 2014, Edwards issued his audit report (the "Audit Report"), which included the entire Stampede Lineup and found that Traxxas owed Feld $1,174,987.58 (Dkt. #60 at p. 3).

On December 1, 2014, Edwards agreed to provide expert testimony on behalf of Feld (Dkt. #60 at p. 4). Traxxas then designated Sidney Blum ("Blum") to "[a]nalyz[e] CRC's report and critiqu[e] [Edwards'] findings, calculations, and methodology." (Dkt. #61 at p. 4).

On April 6, 2015, Traxxas filed its Motion to Strike the Expert Testimony of Douglas Edwards (Dkt. #60). On April 27, 2015, Feld filed its response (Dkt. #83). On May 11, 2015, Traxxas filed its reply (Dkt. #98). On May 21, 2015, Feld filed its sur-reply (Dkt. #102).

On April 6, 2015, Feld filed its Motion to Strike Expert Report and Testimony of Sidney Blum (Dkt. #61). On April 27, 2015, Traxxas filed its response (Dkt. #78). On May 11, 2015, Feld filed its reply (Dkt. #94). On May 21, 2015, Traxxas filed its sur-reply (Dkt. #107).

On April 6, 2015, Feld filed its Motion to Strike Expert Report and Testimony of Kevin Hetmanski (Dkt. #62). On April 27, 2015, Traxxas filed its response (Dkt. #79). On May 11, 2015, Feld filed its reply (Dkt. #95). On May 21, 2015, Traxxas filed its sur-reply (Dkt. #106).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590-93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an

expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove by a preponderance of the evidence that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590-91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *See Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593-94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 594.

The *Daubert* factors are not "a definitive checklist or test." *Daubert*, 509 U.S. at 593. As the Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at

3

issue. *Kuhmo*, 526 U.S. at 151. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citation omitted).

Rule 403 dictates that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Furthermore, the Fifth Circuit has consistently held that an expert may not render conclusions of law. *See Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996); *see also Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("an expert may never render conclusions of law."); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("allowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.")

**ANALYSIS**

*Motion to Exclude Testimony of Douglas Edwards*

Defendant moves to strike Edwards' testimony and report under Rules 702 and 403 of the Federal Rules of Evidence. FED. R. EVID. 702; FED. R. EVID. 403. Defendant argues that Edwards' opinion contains impermissible legal conclusions that are neither reliable nor relevant to the present case, and should be excluded (Dkt. #60 at p. 7). Additionally, Defendant alleges that Edwards is not qualified to render an opinion about R/C Vehicle Terminology, as he is "neither an engineer nor an R/C vehicle enthusiast." (Dkt. #60 at p. 7). Plaintiff asserts that Edwards is qualified to testify as an expert on royalty auditing (Dkt. #83 at p. 7). Additionally, Plaintiff alleges that Edwards' opinion does not contain impermissible legal conclusions, but

4

instead "reflect[s] the amount of royalties that Traxxas should have paid [Feld] under [Feld's] reading of the [License Agreement]." (Dkt. #83 at p. 11).

Rule 702 requires that an expert witness be qualified. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, Rule 702 does not demand that an expert be highly qualified in order to testify, and "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact[.]" *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

Rule 702 also requires that expert testimony be relevant. "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593). The Fifth Circuit has stated that testimony is relevant when it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." *Pipitone*, 288 F.3d at 245 (quoting *Daubert*, 509 U.S. at 591).

Finally, Rule 702 requires that expert testimony be reliable. "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93). When determining reliability, "[t]he court focuses on the expert's methodology, not the conclusions generated by it." *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 783 (N.D. Tex. 2013) (citing *Nunn v. State Farm Mut. Auto Ins. Co.*, No. 3:08-CV-1486-D, 2010 WL 2540754, at *4 (N.D. Tex. June 22, 2010)). "If, however, 'there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proferred,' the court may exclude the testimony as

unreliable." *Orthoflex*, 986 F. Supp. 2d at 783 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also Johnson v. Arkema, Inc.*, 685 F.3d 452, 460-61 (5th Cir. 2012); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278-79 (5th Cir. 1998).

The Federal Rules of Evidence allow an expert to assert opinions that "embrace an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704(a). However, an expert witness may not offer opinions that amount to legal conclusions. *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001); *see also Calderon v. Bank of America, N.A.*, 941 F. Supp. 2d 753, 759-60 (W.D. Tex. 2013) (noting that the law is not a proper subject of expert opinion testimony). The Fifth Circuit has held that while experts may give their opinions on ultimate issues, our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury. *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (quoting *Specht v. Jensen*, 853 F.2d 805, 808-09 (10th Cir. 1988)).

Plaintiff asserts that Edwards is being offered to testify as an expert on royalty auditing (Dkt. #83 at p. 7). Plaintiff contends that Edwards has run a successful business for over 15 years, which focuses exclusively on royalty auditing, and therefore, he is qualified to "analyze vast amounts of raw data and determine the accuracy of numbers reported on a royalty statement, as well as calculate royalties owed on products omitted from royalty statements." (Dkt. #83 at p. 7). Plaintiff alleges that Edwards' Audit Report is relevant because "[it] establishes the amount Traxxas owes if [Feld's interpretation of the License Agreement] prevails." (Dkt. #83 at p. 8). Finally, Plaintiff asserts that Edwards' methodology is reliable as Edwards conducted his royalty audit based upon his experience within the industry (Dkt. #83 at p. 9).

Defendant asserts that Edwards should be stricken as an expert witness because "Edwards cannot be qualified as an expert in the customs and practices, or usage of trade terms

in the R/C vehicle industry[.]" (Dkt. #60 at p. 7). Additionally, Defendant argues that Edwards' opinions are nothing more than improper *ipse dixit* expert opinions (Dkt. #60 at pp. 11-12).[1] Finally, Defendant argues that Edwards' Audit Report contains impermissible legal conclusions (Dkt. #60 at pp. 8-11).

The Court finds that Edwards possesses the requisite professional experience to render an expert opinion on royalty audits, and Edwards' Audit Report is relevant in determining damages if Feld's interpretation of the contract prevails.[2] The Court also finds that Edwards' Audit Report does not contain impermissible legal conclusions. Instead, it states what he believes the damages would be if Feld's interpretation of the License Agreement prevails at trial. However, the Court will strike Edwards' Audit Report as to Audit Finding #4[3], Audit Finding #5, and Audit Finding #6. Traxxas made payments to Feld to resolve Audit Findings #4, #5, and #6, and therefore, the testimony is not relevant[4] (Dkt. #60 at p. 11, Exhibit A at ¶ 68, Exhibit 1). Therefore, the Court finds that Defendant's motion to exclude Edwards' testimony and report should be granted in part, and denied in part.

---

[1] The Court does not agree with Defendant that Edwards' opinions are improper *ipse dixit* expert opinions. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-cv-03181, 2010 WL 4065465, at *17 (S.D. Tex. Oct. 9, 2010) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. at 146). Edwards' Audit Report does contain quantitative analysis that demonstrates how he arrived at his results, and provides the ability for Edwards to be questioned about the manner in which he arrived at his conclusions. Dkt. #60, Exhibit 57; s*ee Interplan Architects*, 2010 WL 4065465, at *17; *Gen. Star Indem. Co. v. Sherry Brooke Revocable Trust*, 243 F. Supp. 2d 605, 626 (W.D. Tex. 2001) (stating that conclusory opinions by experts lack the requisite evidentiary reliability because they fail to set forth a discernable methodology).
[2] Edwards' qualifications only relate to the capacity that Traxxas has designated him, as an expert on royalty audits. The Court, therefore, is not addressing whether Edwards is qualified to offer his opinion as to the interpretation of the License Agreement, as this is beyond the scope of his testimony.
[3] Edwards' Audit Report incorrectly refers to Audit Finding 4 as "Audit Finding #3) Unauthorized Deductions." Because Edwards had already listed "Audit Finding #3" above the second Audit Finding #3, and followed it with "Audit Finding #5," the Court will assume that Edwards made a mistake in numbering, and was referring to Audit Finding #4) Unauthorized Deductions (Dkt. #60, Exhibit 57).
[4] Feld did not address this argument in either its response (Dkt. #83) or its sur-reply (Dkt. #102). Therefore, the Court finds that Feld did not oppose striking Audit Findings #4, #5, and #6 as to Edwards' testimony regarding his Audit Report, as Traxxas made payments to Feld for these items (*See* Dkt. #60, Exhibit A at ¶ 68, Exhibit 1).

*Motion to Strike Expert Report and Testimony of Sidney Blum*

Plaintiff seeks to strike the report and testimony of Defendant's rebuttal expert Sidney Blum (Dkt. #61). Plaintiff asserts that Blum's testimony should be stricken because it is irrelevant, unreliable, and Blum is unqualified to testify about the methodology of conducting a royalty audit (Dkt. #61 at pp. 1-2). Defendant asserts that Blum is qualified to testify based on his experience in the royalty auditing industry (Dkt. #78 at pp. 5-7). Defendant also contends that Blum's testimony does not contain impermissible legal conclusions, and is relevant to the present case (Dkt. #78 at pp. 7-11).

The Court finds that Blum is qualified to render an opinion as to the methodology Edwards used in his Audit Report. The Fifth Circuit has held that "[t]o qualify as an expert, the witness must have such knowledge or experience in [his] field or calling to make it appear that his opinion or inference will probably aid the trier in his search for truth." *Metzler v. XPO Logistics, Inc.*, No. 4:13-CV-278, 2014 WL 7146108, at *3 (E.D. Tex. Dec. 15, 2014). Where there are reasonable indications of an expert's qualifications, the question is no longer one of gatekeeping, but one of fact for the trier of fact. *Boral v. Odyssey Pictures Corp.*, No. 4:14-CV-00044, 2015 WL 993241, at *2 (E.D. Tex. Mar. 4, 2015). Blum has extensive experience within the field of royalty auditing (Dkt. #61, Exhibit A at pp. 58-61). Through his experience, Blum is qualified to testify on the methodology used to conduct a royalty audit.

However, after considering Blum's expert report, the Court finds that portions of his report invade on the province of both the Court, in instructing the jury on the applicable law, and the jury in determining the facts to be applied to the law. Opinions 1 and 3 of Blum's report analyze the standards under the American Institute of Certified Public Accountants ("AICPA") and the Association of Certified Fraud Examiners ("ACFE"), however they do not seem to

challenge Edwards' calculations (*See* Dkt. #61, Exhibit A). Plaintiff asserts that these opinions contain impermissible legal conclusions, and should be stricken (Dkt. #61 at p. 5). However, the trier of fact will not be making a determination under the AICPA or the ACFE. Additionally, Blum is being offered as a rebuttal expert to critique the methodology of Edwards; therefore, the standards under the AICPA and ACFE are relevant to his testimony. The Court finds that Blum's testimony is permissible as to Opinions 1 and 3 of the Blum Report.

Plaintiff also asserts that Opinions 2, 4, and 5 of Blum's report contain impermissible legal conclusions. The Court finds that portions of Opinion 5 concerning "Royalties are Only Due on Products Called 'Stampede'," constitute a legal conclusion, and should be stricken (Dkt. #61, Exhibit A at p. 45). Specifically, the Court strikes any reference in which Blum interprets the License Agreement as it would constitute an impermissible legal conclusion. Additionally, the Court finds that portions of Opinion 2 contain impermissible legal conclusions, and should be stricken. Specifically, the Court finds that paragraphs 132, 133, and 138 should be stricken as impermissible legal conclusions (Dkt. #61, Exhibit A at pp. 38-40). However, the Court finds that Opinion 4, which pertains to the damages incurred if the royalty audit was conducted according to the relevant standards, is permissible, and will not be stricken (Dkt. #61, Exhibit A at pp. 43-45).

Finally, Blum asserts in Opinion 6 that the License Agreement did not use adequate language to describe the royalty bearing units (Dkt. #61, Exhibit A at p. 47). Blum is not qualified to give testimony regarding the terms of the license agreement, and the Court finds that Opinion 6 constitutes an impermissible legal conclusion and should be stricken. Therefore, the Court finds that Plaintiff's motion to strike Blum should be granted in part and denied in part.

*Motion to Strike Expert Report and Testimony of Kevin Hetmanski*

Plaintiff also seeks to the strike the expert report and testimony of Defendant's designated expert, Kevin Hetmanski ("Hetmanski") (Dkt. #62). Plaintiff asserts that Hetmanski's testimony should be stricken because it is unreliable, and Hetmanski is unqualified to offer an opinion regarding the "specific differences in the design or manufacture of Traxxas models." (Dkt. #62 at pp. 1-2).

Defendant alleges that Hetmanski is qualified to testify as an expert regarding the R/C vehicle industry (Dkt. #79 at p. 6). Additionally, Defendant asserts that Hetmanski's testimony "provides the industry perspective on all [the] relevant terms [of the License Agreement]," and therefore, his testimony will assist the trier of fact (Dkt. #79 at p. 3). Finally, Defendant asserts that Hetmanski's testimony is reliable as he "utilized his own personal knowledge and experience to record his opinions and verified specific supporting information for his opinions with industry websites and articles[.]" (Dkt. #79 at p. 7).

After reviewing the relevant pleadings, the Court finds that Hetmanski is qualified to testify as an expert. The Court agrees with Defendant that Hetmanski's testimony is reliable and "would assist the trier of fact to understand the evidence or to determine a fact in issue." *Pipitone*, 288 F.3d at 245 (quoting *Daubert*, 509 U.S. at 591). Hetmanski supports his opinions with substantial detail distinguishing various physical and mechanical differences between the models in the Stampede Lineup. Additionally, Hetmanski has "worked in the R/C Industry for more than 14 years" and has been "an R/C hobbyist for over twenty years." (Dkt. #62, Exhibit C). Therefore, the Court finds that Hetmanski has the experience needed to render an expert opinion regarding the terminology used within the R/C vehicle industry. Therefore, the Court

finds that Plaintiff's Motion to Strike Expert Report and Testimony of Kevin Hetmanski should be denied.[5]

## CONCLUSION

It is therefore **ORDERED** that Traxxas LP's Motion to Strike the Expert Testimony of Douglas Edwards (Dkt. #60) is hereby **GRANTED IN PART AND DENIED IN PART**, Feld Motor Sports, Inc.'s Motion to Strike Expert Report and Testimony of Sidney Blum (Dkt. #61) is hereby **GRANTED IN PART AND DENIED IN PART**, and Feld Motor Sports, Inc.'s Motion to Strike Expert Report and Testimony of Kevin Hetmanski (Dkt. #62) is hereby **DENIED**.

**SIGNED this 7th day of August, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[5] Plaintiff also asserts that Hetmanski's opinion is nothing more than lay observations that do not require expert testimony (Dkt. #62 at pp. 10-11). Because Hetmanski is testifying as to the industry use of the terms at issue in the present case, the Court finds that his opinion constitutes an expert opinion, not lay testimony.