# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

FELD MOTOR SPORTS, INC.      §
     §
v.      §      CASE NO. 4:14-CV-543
     §      LEAD
     §      Judge Mazzant
TRAXXAS, LP      §

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Feld Motor Sports, Inc.'s Motion for Attorneys' Fees (Dkt. #164), Feld Motors Sports, Inc.'s Motion for Bill of Costs (Dkt. #167), and Feld Motor Sports, Inc.'s Supplemental Motion for Attorneys' Fees and Expenses (Dkt. #184). After reviewing the relevant pleadings, the Court finds that the motions should be granted in part and denied in part.

## BACKGROUND

On April 14, 2014, Traxxas LP ("Traxxas") filed its action against Feld Motor Sports, Inc. ("Feld") in the 429th District Court of Collin County, Texas, in which it sought declaratory relief, stating that it did not owe Feld royalties on the two-wheel drive Brushless Stampede ("the Stampede VXL"), the Nitro Stampede, and the Stampede 4x4 (*See* Dkt. #3 in 4:14-cv-463). On July 11, 2014, the case was removed to the Eastern District of Texas, and filed as *Traxxas, LP v. Feld Motor Sports, Inc.*, No. 4:14-cv-463 (E.D. Tex. 2014) (Dkt. #1).

On July 11, 2014, Feld filed its action against Traxxas in the United States District Court for the Eastern District of Virginia, in which it alleged that Traxxas has breached the License Agreement, breached the implied covenant of good faith and fair dealing, and failed to pay audit expenses, and failed to pay interest on late payments (Dkt. #1). On August 15, 2014, the case

was transferred to the Eastern District of Texas, and filed as *Feld Motor Sports, Inc. v. Traxxas, LP*, No. 4:14-cv-543 (E.D. Tex. 2014) (Dkt. #21).

On April 3, 2015, Traxxas filed its Motion for Summary Judgment (Dkt. #51). On April 27, 2015, Feld filed its response (Dkt. #84). On May 11, 2015, Traxxas filed its reply (Dkt. #97). On May 21, 2015, Feld filed its sur-reply (Dkt. #105).

On April 3, 2015, Feld filed its Motion for Summary Judgment (Dkt. #54). On April 27, 2015, Traxxas filed its response (Dkt. #81), and filed its objections to Feld's Summary Judgment Evidence (Dkt. #80). On May 11, 2015, Feld filed its reply (Dkt. #92), and filed its response to Traxxas's objections (Dkt. #96). On May 21, 2015, Traxxas filed its sur-reply (Dkt. #109), and its reply to its objections (Dkt. #108). On June 1, 2015, Feld filed its sur-reply to Traxxas's objections (Dkt. #111). On May 11, 2015, Traxxas filed its objections to Feld's summary judgment opposition evidence (Dkt. #100). On May 21, 2015, Feld filed its response (Dkt. #104). On June 1, 2015, Traxxas filed its reply (Dkt. #112). On June 11, 2015, Feld filed its sur-reply (Dkt. #113). On July 31, 2015, the Court denied both Traxxas's Motion for Summary Judgment and Feld's Motion for Summary Judgment, finding that material fact issues existed in the case (Dkt. #118).

On June 12, 2015, Feld filed its Motion to Consolidate Cases and to Remain as Plaintiff (Dkt. #98 in 4:14-cv-463). Also on June 12, 2015, Traxxas filed its Unopposed Motion to Consolidate Cases and Opposed Motion to Establish Order of Proof (Dkt. #99 in 4:14-cv-463). On June 23, 2015, Feld filed its response to Traxxas's motion (Dkt. #101 in 4:14-cv-463). On June 24, 2015, Traxxas filed its response to Feld's motion (Dkt. #102 in 4:14-cv-463). On June 24, 2015, the Court held a hearing on consolidation. Following the hearing, the Court ordered the matters *Feld Motor Sports, Inc. v. Traxxas, LP*, No. 4:14-cv-543, and *Traxxas, LP v. Feld*

*Motor Sports, Inc.*, No. 4:14-cv-463, to be consolidated (Dkt. #103 in 4:14-cv-463). However, the Court held its determination as to which case would be the lead case until a later date (Dkt. #103 in 4:14-cv-463). On July 31, 2015, after considering the relevant pleadings, the Court determined that Feld would remain as Plaintiff in the consolidated cases, and that the No. 4:14-cv-543 case would be the lead case in the consolidated action (Dkt. #119 in 4:14-cv-543).

The trial began on August 24, 2015. At the close of Feld's case-in-chief, Traxxas made a motion for judgment as a matter of law, in which it requested that the Court grant judgment as a matter of law in favor of Traxxas, as Feld had not proved its case. The Court denied Traxxas's motion. On August 31, 2015, Feld requested judgment as a matter of law, which the Court denied. On September 1, 2015, the jury rendered its verdict and found the following: (1) the parties intended the License Agreement to include (a) the Stampede Brushless VXL; (b) the Stampede Brushed 4x4; (c) the Stampede Brushless 4x4 VXL; and (d) the Nitro Stampede, when calculating royalties; and (2) Traxxas owed Feld $955,620.30 in unpaid royalties under the License Agreement (Dkt. #162).

On September 14, 2015, the Court entered its Final Judgment, in which it ordered judgment in favor of Feld in the amount of $955,620.30, plus costs and expenses, against Traxxas (Dkt. #163 at p. 1). The Court also stated that "[p]ostjudgment interest is payable to Plaintiff on the foregoing judgment amount at the contractually provided rate of twelve percent (12%) *per annum* from the date this judgment is entered until judgment is paid." (Dkt. #163 at p. 1). The Court also awarded Plaintiff its attorneys' fees and stated that "[c]ourt costs are taxed to Defendant." (Dkt. #163 at p. 1).

On September 28, 2015, Feld filed its Motion for Attorneys' Fees (Dkt. #164). On October 22, 2015, Traxxas filed its response (Dkt. #172). On November 9, 2015, Feld filed its reply (Dkt. #178). On November 19, 2015, Traxxas filed its sur-reply (Dkt. #182).

On September 29, 2015, Feld filed its Motion for Bill of Costs (Dkt. #167). On October 22, 2015, Traxxas filed its response (Dkt. #171). On November 9, 2015, Feld filed its reply (Dkt. #177). On November 19, 2015, Traxxas filed its sur-reply (Dkt. #180).

On December 11, 2015, Feld filed its Supplemental Motion for Attorneys' Fees (Dkt. #184). On December 29, 2015, Traxxas filed its response (Dkt. #186). On January 4, 2016, Feld filed its reply (Dkt. #187).

## LEGAL STANDARD

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of discretion." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Therefore, because this case utilizes New York law, the Court will look to determine the reasonableness of the attorneys' fees.[1] [2]

"New York follows the 'American Rule' on the award of attorneys' fees, meaning that 'attorneys' fees and disbursements are incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by

---

[1] As a preliminary matter, the parties agree that New York law controls this diversity action under the terms of the License Agreement. "When the laws of two or more states may apply to the various claims in a federal diversity action, the court must apply the choice of law rules of the forum state." *Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 951 (S.D. Tex. 2011) (citing *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004)). Therefore, Texas choice of law rules determine which law applies to each claim in the present case. Generally, Texas law gives effect to contractual choice of law provisions. *Quicksilver Res., Ins.*, 792 F. Supp. 2d at 951; *see Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990); Restatement (Second) of Conflict of Laws § 187 (1971). Therefore, based upon the language of the License Agreement, the Court will apply New York law to determine Feld's Motion for Attorneys' Fees, Motion for Bill of Costs, and Supplemental Motion for Attorneys' Fees (Trial Ex. 11 at p. 10 ¶ 25).

[2] "New York courts frequently look to federal case law in determining whether an award of attorney's fees is reasonable." *Expeditors Int'l of Wash., Inc. v. Rubie's Costume Co., Inc.*, No. 03 CV 3333 SLT WDW, 2007 WL 430096, at *1 n. 2 (E.D.N.Y. Feb. 2, 2007); *see, e.g., Bell v. Helmsley*, No. 111085/D1, 2003 WL 21057630, at *1 (N.Y. Sup. Ct. Mar. 27, 2003); *see also Matthews v. LFR Collections LLC*, No. 4:13-cv-2311, 2015 WL 502040, at *4 (S.D. Tex. Feb. 4, 2015).

statute or court rule.'" *Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 241 (S.D.N.Y. 2011) (quoting *A.G. Ship Maint. Corp. v. Lezak*, 503 N.E.2d 681, 683 (N.Y. 1986). "[A] contract provision that one party to a contract pay the other party's attorneys' fees in the event of breach is enforceable 'so long as those amounts are not unreasonable.'" *Weiwei Gao v. Sidhu*, No. 11 Civ. 2711 (WHP) (JCF), 2013 WL 2896995, at *5 (S.D.N.Y. June 13, 2013); (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)); *see Wells Fargo N.W., N.A. v. Taca Int'l Airlines, S.A.*, 315 F. Supp. 2d 347, 353 (S.D.N.Y. 2003). In the present case, the parties agree that the License Agreement awarded damages to the prevailing party of any litigation (Trial Ex. 11 at p. 8 ¶ 14(c)) ("In the event that litigation of any nature with respect to performance, non-performance or breach by Licensee of its duties and obligations hereunder is initiated, then and in such event, the non-prevailing party shall promptly reimburse the prevailing parties for the prevailing party costs and expenses, *including reasonable attorneys' fees*, incurred in connection with said litigation.") (emphasis added)).

Under New York law, courts determine the reasonableness of attorneys' fees using the lodestar analysis. *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 20-21 (S.D.N.Y. 2015); *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 206 (E.D.N.Y. 2007). "[The lodestar] assessment results in a 'presumptively reasonable fee,' which is 'calculated by multiplying the number of hours reasonably billed…by the appropriate hourly rate.'" *Gonzalez*, 112 F. Supp. 3d at 21 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2007); *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 n. 4 (2d Cir. 2008)). "[T]he lodestar method involve[s] two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations." *Arbor Hill*, 522 F.3d at 186.

Under the lodestar method, the Court must first determine the amount of reasonable hours expended. "Courts are given broad discretion to evaluate the reasonableness of the number of hours expended." *Shim v. Millennium Grp.*, No. 08-CV-4022 (FB)(VVP), 2010 WL 2772493, at *4 (E.D.N.Y. June 21, 2010); *see Anderson v. Sotheby's, Inc.*, No. 04-CV-8180, 2006 WL 2637535, at *1 (S.D.N.Y. Sept. 11, 2006). "While the resulting number is not conclusive in all circumstances,…there is a 'strong presumption' that the lodestar figure is reasonable." *Gonzalez*, 112 F. Supp. 3d at 21 (quoting *Balestriere PLLC v. CMA Trading, Inc.*, No. 11 CIV. 9459 MHD, 2014 WL 7404068, at *3 (S.D.N.Y. Dec. 31, 2014) (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)) (internal quotations omitted).

Next, the Court must determine a reasonable hourly rate. Generally, to determine an appropriate hourly rate, "the court looks to rates prevailing in the community 'for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984); *accord Perdue*, 559 U.S. at 551 ("[I]n accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to the prevailing market rates in the relevant community."). *See Gamache v. Steinhaus*, 776 N.Y.S.2d 310, 311 (N.Y. App. Div. 2004). "[T]he burden is on the fee applicant to produce satisfactory evidence-in addition to the attorneys' own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Cho*, 524 F. Supp. 2d at 206 (quoting *Blum*, 465 U.S. at 895-96 n. 11 (1984)) (internal quotations omitted). The relevant "community" is "the district in which the court sits[.]" *Id.* (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997)) (internal citations omitted). In the present case, the relevant community consists of the Eastern District of Texas.

After the Court calculates the lodestar calculation, it should review the amount in line with the *Johnson* factors. "[T]he district court should consider among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. The *Johnson* factors were developed by the Fifth Circuit to establish a reasonable fee. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989). *Johnson* lays out twelve factors for the court to consider which include the following:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the level of skill required to perform the legal service properly;
(4) the preclusion of employment by the attorney due to acceptance of the case;
(5) the attorney's customary hourly rate;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or the circumstances;
(8) the amount involved in the case and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19. However, many of the *Johnson* factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.[3] *Pennsylvania v. Del. Valley Citizens' Council for Clear Air*, 478 U.S. 546, 564 (1986).

## ANALYSIS

*Feld's Motion for Attorneys' Fees (Dkt. #164)*

Feld seeks $1,634,536 in legal fees, comprising $1,597,896 incurred by the attorneys at Harris, Wiltshire & Grannis, LLP ("HWG"), and $36,640 incurred by the attorneys at Gardere

---

[3] The "novelty and complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount. *Pennsylvania*, 4787 U.S. at 565.

Wynne Sewell, LLP ("Gardere") (Dkt. #164 at p. 3). Feld asserts that it "incurred reasonable attorneys' fees from both its trial counsel and local counsel. Both firms worked a reasonable number of hours for this matter and charged [Feld] an hourly rate that is appropriate for lawyers of comparable skill and experience in this District." (Dkt. #164 at p. 4). Traxxas asserts that the fees assessed are not reasonable for the following reasons: (1) Feld's counsel overstaffed the case; (2) Feld's counsel engaged in "gross overbilling;" and (3) Feld's counsel engaged in "improper billing" techniques (Dkt. #172 at p. 1).

**Hours Reasonably Expended[4]**

Feld asserts that "HWG attorneys expended 4,594.3 hours on this matter[,]" and "Gardere attorneys expended 109.8 hours on this matter." (Dkt. #164, Exhibit A at p. 8).[5] Furthermore, Feld asserts that their counsel worked the following hours on the case:

| | |
|---|---|
| Mr. Kimmett | 1,468.5 hours |
| Mr. Anderson | 1,144.1 hours |
| Ms. Norvell | 1,000.5 hours |
| Mr. Grimm | 918.3 hours |

(Dkt. #164, Exhibit A at p. 8).[6] Additionally, local counsel for Gardere expended 109.8 hours of legal work. Specifically, the attorneys at Gardere worked the following hours:

| | |
|---|---|
| Ms. Early | 38.4 |
| Ms. Lee | 63.7 |

---

[4] As a preliminary matter, Feld argues that "Traxxas blatantly manipulated HWG's time records...Traxxas altered [Feld's billing entires] by deleting tasks from HWG's time records to make them appear vague when they [were] not." (Dkt. #178 at p. 2). The Court finds that in preparing their response, Traxxas re-worked the time records, but the Court does not find that Traxxas "blatantly manipulated" the time records, but instead re-worked the time records as examples for its attorney's declaration. For purposes of this motion, the Court will not use the time records provided by Traxxas as they are not a complete and accurate representation of Feld's time records, but will instead use the time records provided by Feld (*See* Dkt. #164, Exhibit C).

[5] After reviewing the billing records provided by HWG, the Court calculates 4,531.4 hours of attorney time performed in the present case. Therefore, for purposes of this motion, the Court will use the Court's calculation as the total amount of attorney hours performed by HWG attorneys.

[6] Traxxas asserts that it charged 2,570.7 hours in the present case, which it deems is a reasonable amount of hours spent (*See* Dkt. #172 at p. 3). However, under the Lodestar method, the Court does not take into consideration the hours that the other side spent preparing their case for trial, therefore, the Court will not address Traxxas' argument, or consider Traxxas' hours when making its determination as to whether the hour charged by Feld's attorneys were reasonable.

(Dkt. # 164, Exhibit B).[7]   Traxxas asserts that Feld's "attorneys' fees demand is excessive because its counsel:   (a) overstaffed the matter…; (b) overbilled for a variety of discovery activities…; (c) improperly includ[ed] travel time at full billing rates; and (d) engag[ed] in improper 'block billing,' making it impossible to discern which tasks were done within a reasonable time frame."  (Dkt. #172 at p. 8).

"To obtain an award of attorneys' fees, a plaintiff must provide contemporaneous time records."  *Akman v. Pep Boys Manny Moe & Jack of Del., Inc.*, No. 11-CV-3252, 2013 WL 4039370, at *1 (E.D.N.Y. Aug. 7, 2013); *see Scott v. City of New York*, 643 F.3d 56, 58-59 (2d Cir. 2011); *Pilitz v. Inc. Vill. of Freeport*, No. 07-CV-4078, 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011) ("The burden is on the party seeking attorney's fees to submit evidence to support the hours worked and the rates claimed…. Accordingly, the party seeking an award of attorney's fees must support its application by providing contemporaneous time records that detail 'for each attorney, the date, the hours expended, and the nature of the work done.'").  "The fee applicant is obligated to 'make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.'"  *Amato v. City of Saratoga Springs*, 991 F. Supp. 62, 66 (N.D.N.Y. 1998) (quoting *Hensley*, 461 U.S. at 434).

"In considering what is reasonable, courts 'should exclude excessive, redundant or otherwise unnecessary hours.'"  *Shim*, 2010 WL 2772493, at *4 (quoting *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley*, 461 U.S. at 434)).  Courts should also eliminate duplicative hours.  *See id.*; *see, e.g., Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1988); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146-47 (2d Cir.

---

[7] After reviewing the billing records provided by Gardere, the Court finds that some of the total hours performed were written off by the attorneys when they submitted the invoices (*See* Dkt. #164, Exhibit B).  For purposes of this motion, the Court will use its calculation of 102.1 attorney hours performed by the Gardere attorneys.

1983).    Therefore in determining the reasonableness of hours expended, "[c]ourts should consider 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."   *Shim*, 2010 WL 2772493, at *4 (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).

First, Traxxas asserts that HWG failed to exercise billing judgment, which is represented by the overstaffing of attorneys on the case (Dkt. #172 at p. 4).  Specifically, Traxxas asserts that "[e]very deposition and motion in [the] case was a multiple-lawyer billing event for [Feld].  Four or more timekeepers would be responsible for conferencing regarding briefs and depositions as well as researching, drafting, and revising them."  (Dkt. #172 at pp. 8-9).  To demonstrate that it exercised billing judgment, Feld presents the Court with a declaration from HWG's lead attorney, Charles Kimmett (the "Kimmett Declaration"), as well as a supplemental declaration from Kimmett (the "Supplemental Declaration") (Dkt. #164, Exhibit A; Dkt #177, Exhibit C).[8] Feld asserts that the "hours [billed] were not only reasonable, but also necessary to represent [Feld] adequately on a case involving detailed fact discovery, extensive motion practice, and the need for a precise understanding of…the R/C model units at issue."  (Dkt. #164 at p. 4).

"[T]he court must inquire whether the party exercised 'billing judgment' in arriving at the total number of hours requested."  *Grievson v. Rochester Psychiatric Ctr.*, 746 F. Supp. 2d 454, 465-66 (W.D.N.Y. 2010) (citing *Hensley*, 461 U.S. at 434 ("[i]n the private sector, billing judgment is an important component in fee setting[;] [i]t is no less important here") (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)).  "If the attorney did not properly

---

[8] In its sur-reply, Traxxas objects to the consideration of the Supplemental Declaration as it was filed in the reply brief (Dkt. #182 at p. 2 n. 1).  Traxxas argues that Feld "should not be allowed to lie behind the log and then unload on Traxxas with a battery of new evidence and arguments to meet its burden."  (Dkt. #182 at p. 2 n. 1).  "Under Federal Rule of Civil Procedure 6(b), the trial court had broad discretion to accept late-filed affidavits, 'where the failure to act was the result of excusable neglect.'"  *Slaughter v. S. Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990).  After reviewing the Supplemental Declaration, the Court finds that Feld does not make new arguments, but is merely supplementing its original declaration; and therefore, as the Supplemental Declaration does not prejudice Traxxas, the Court will overrule Traxxas' objection.

exercise billing judgment, then the court must reduce the hours to exclude those that were 'excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Hensley*, 461 U.S. at 434). "One way to accomplish that reduction is to evaluate the reasonableness of each individual time entry and to make reductions and exclusions as necessary." *Id.*; *see, e.g., Pasternak v. Baines*, 2008 WL 2019812, at *7 (W.D.N.Y. 2008); *Rich Prods. Corp. v. Impress Indus.*, 2008 WL 203020, at *3 (W.D.N.Y. 2008). The Court can also "apply a reasonable percentage reduction to the total number of hours requested." *Grievson*, 746 F. Supp. 2d at 466.

The Court finds that Feld failed to demonstrate that it exercised the proper billing judgment which respect to HWG's invoices. Feld argues that the tier structure inherently gives Feld a discount and demonstrates its billing judgment; however, the Court is unable to see the amount of hours discounted through the tiered structure. Through the Court's review of HWG's billing entries, the Court can see that HWG wrote off its paralegal time from the billing, as those hours are not included in the request for attorneys' fees, however, the Court finds that Feld still did not exercise sufficient billing judgment. Additionally, the Court also found a couple of circumstances where HWG gave Feld a discount (*See* Dkt. #164, Exhibit C). The Court will discount HWG's hours at 10%.

However, the Court does find that Gardere exercised billing judgment. In the billing entries presented by Gardere, the Court can see instances where time was written off and is redacted by the attorneys (Dkt. #164, Exhibit B). Therefore, the Court finds that Gardere's hours will not be deducted for failing to exercise billing judgment.

Traxxas also asserts that Feld's attorneys document excessive hours. Traxxas alleges that Feld "overbilled 164.1 hours in defending all six (6) depositions[,]" "overbilled 471.1 hours in taking seven (7) tested depositions[,]" billed "[u]p to 241.8 hours" associated with Feld's venue

challenge, billed "[u]p to 463.7 hours" associated with the parties' motions for summary judgment and Feld's Daubert challenges, and billed "[u]p to 129.1 hours" associated with the reply and objections to the summary judgment motions and Feld's Daubert challenges (Dkt. #172 at pp. 9-10).[9] Traxxas also objects to the amount of hours Feld's attorneys charged during trial (*See* Dkt. #172 at p. 11). Specifically, Traxxas argues that Feld's attorneys charged for six timekeepers who billed 883.5 hours, and two associates who billed for "attending trial[,]" and had almost no role during trial (Dkt. #172 at p. 11).[10] Although Traxxas asserts that HWG's use of multiple timekeepers was "excessive" and "inefficient[,]" the Court finds that each of HWG's attorneys had an active role during trial, and each performed a distinct task.

Traxxas also asserts that Feld included duplicative hours. The Second Circuit has left determination of redundancy in fee applications to the discretion of the district court:

> prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist…Of course, a trial judge may decline to compensate hours spent by collaborate lawyers or may limit the hours allowed for specific tasks but for the most party such decisions are best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation.

*Bridges v. Eastman Kodak Co.*, No. 91 Civ. 7985 (RLC), 1996 WL 47304, at *6 (S.D.N.Y. Feb. 6, 1996) (quoting *Carey*, 711 F.2d at 1146 (citation omitted)). "While it is true that redundant

---

[9] Traxxas also alleges that Feld "spent up to 834.6 hours for almost completely unsuccessful litigation practices." (Dkt. #172 at p. 10). The Court is unclear what "unsuccessful litigation practices" Traxxas is referring to, and thus will not address the argument.

[10] In its motion, Feld asserts that "[l]ike [Feld], Traxxas often had two attorneys attend each deposition. Four attorneys from HWG—two partners and two associates—represented [Feld] at trial, while Traxxas was represented by between two and three partners and one associate at trial." (Dkt. #164 at p. 5). In its response, Traxxas asserts that it had three timekeepers during trial. "Sean Lemoine and Bryan Wick who tried the case and Darla Gabbitas who argued the directed verdict at the end of [Feld's] case in chief and was tasked with ensuring exhibits were properly entered, that evidence necessary for certain defenses or arguments was introduced, and to assist at trial." (Dkt. #172 at p. 11 n. 29) (citing Dkt. #172, Exhibit 1). Jeffrey Hellberg also billed hours, and attended portions of the trial, as he assisted Traxxas with jury charge discussions and pretrial preparations (*See* Dkt. #172 at p. 11 n. 29). The Court finds that Traxxas' argument that Feld overstaffed the trial is without merit, as Traxxas also had multiple timekeepers billing during trial.

work should not be billed, many tasks in fact require or benefit from the attention of more than one attorney.  Attendance at trial…[is] such a task."  *Id.*

> Attendance at depositions, however, is to some extent a different matter.  Time spent in depositions is far less adversarial and not nearly so crucial to the success of the case as time spent in trial.  Thus, "[w]hile the court recognizes that assistance at depositions is often necessary, generally that assistance is offered by an associate at a much lower rate."

*Id.*, at *7 (quoting *Carrero v. New York City Hous. Auth.*, 685 F. Supp. 904, 908 (S.D.N.Y. 1988), *rev'd in part on other grounds*, 890 F.2d 569 (2d Cir. 1989)).[11]  A party "should not be required to compensate all of…[the] appearances when the use of just one or two lawyers would have been adequate."  *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 388 F. Supp. 2d 159, 165 (W.D.N.Y. 2005); *see Sabatini v. Corning-Painted Post Area Sch. Dist.*, 190 F. Supp. 2d 509, 521 (W.D.N.Y. 2001) ("While plaintiffs or their attorneys might have preferred to have both [attorneys] in court that day [for oral argument], that does not mean that it was reasonably necessary that they both attend, and presumably either one of them could have argued the motion alone.").

After reviewing HWG's billing records, the Kimmett Declaration, and the Supplemental Declaration, the Court finds that the hours requested by Feld are not overly duplicative and the case was not overstaffed.  Traxxas argues that Feld "did not need multiple attorneys at hearings, deposition, and ultimately at trial."  (Dkt. #172 at p. 12).  However, the Court finds that this was a complicated matter that required the legal expertise of a trial team.  In its Supplemental Declaration, Kimmett states that,

---

[11] Feld asserts that the tiered fee structure that Feld employed meant that a partner and an associate's time counted the same in billing, "so the concerns in *Bridges* do not apply."  (Dkt. #178 at p. 3 n. 13).  The Court will address the reasonableness of Feld's fees below; however, the Court finds that Feld did employ the structure recognized by the *Bridges* court, as it appears from the Court's review of the billing records that a partner and an associate attended each deposition (*See* Dkt. #164, Exhibit C).

> Discovery involved thousands of documents. Indeed, Traxxas produced over 14,000 pages of documents, and [Feld] produced more than 4244 pages of documents, which does not include numerous additional non-responsive or privileged documents that HWG attorneys had to review during discovery. The parties took 17 depositions.

(Dkt. #177, Exhibit C at ¶ 21). Additionally, Kimmett states,

> The parties filed cross-motions for summary judgment of 45 pages each, and for each motion there were four rounds of briefing. In addition, the parties were simultaneously briefing objections to evidence included in the summary judgment motions and oppositions….The time HWG spent briefing summary judgment motions and objections reflects the complexity and length of these motions.

(Dkt. #177, Exhibit C at ¶ 35). Mr. Kimmett also addressed multiple attorneys attending depositions in his Supplemental Declaration.

> HWG prepared for depositions…by reviewing thousands of documents Traxxas provided in discovery, preparing witness outlines, compiling exhibits, and drafting outlines. HWG often sent two attorneys to depositions so that one could provide essential assistance with documents and confer on strategy. However, each deposition was prepared primarily by the attorney taking the deposition.

(Dkt. #177, Exhibit C at ¶ 40). Finally, Mr. Kimmett addressed the multiple attorneys attending trial (*See* Dkt. #177, Exhibit C at ¶¶ 53-58). He stated that, "Walter Anderson, John Grimm, and [Kimmett] argued [Feld's] motions *in limine*, and Ms. Norvell provided support by preparing for many of [the] arguments and identifying key exhibits and testimony in support…." (Dkt. #177, Exhibit C at ¶ 53). He also states that,

> Mr Anderson and [Kimmett] divided the examination of all witnesses who testified at trial. Mr. Grimm and Ms. Norvell also actively and significantly contributed throughout the trial. They provided support during witness examinations by assisting in witness prep, helping to prepare witness examination outlines, identifying supporting exhibits and testimony, analyzing juror questions and identifying lines of testimony and exhibits to address them, drafting multiple revised version[s] of the juror charge and verdict form, preparing [Feld's] motions for judgment as a matter of law, [and] creating demonstrative exhibits for use during the trial and in summation….

(Dkt. #177, Exhibit C at ¶ 54). Additionally, the Court finds that the other challenged instances of duplicative effort, such as conferences with attorneys and research time, constitute reasonable time expenditures for all of the attorneys involved. *See Bridges*, 1996 WL 47304, at \*7; *see e.g., EEOC v. Local 638 and Local 28 of the Sheet Metal Workers' Int'l Ass'n*, No. 71 Civ. 2877 (RLC), 1991 WL 278917, at \*2 (S.D.N.Y. Dec. 18, 1991).

Traxxas also objects to the reasonableness of the hours that Feld's attorneys billed because they contain vague or over-redacted references in the billing statements. "Courts may reduce the number of hours in a fee application where the time entries submitted by counsel are too vague to sufficiently document the hours claimed." *Manti's Transp. v. Kenner*, No. 13-CV-6546 (SJF)(AYS), 2015 WL 1915004, at \*11 (E.D.N.Y. Apr. 27, 2015) (quoting *Barclays Capital Inc. v. Theflyonthewall.com*, No. 06-civ-4908, 2010 WL 2640095, at \*4 (S.D.N.Y. June 30, 2010); *Mary Jo C. v. Dinapoli*, No. 09-CV-5635 (SJF)(ARL), 2014 WL 7334863, at \*9 (E.D.N.Y. Dec. 18, 2014); *see Harley v. Nesby*, No. 08 Civ. 5791 (KBF)(HBP), 2012 WL 1537881, at \*12 (S.D.N.Y. May 2, 2012); *see also Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (finding entries such as "letter to [opposing counsel]," "telephone call to [opposing counsel]" and "discussion with [opposing counsel" to be "overly vague" and reducing the hours claimed by 15%). "Counsel is not required to 'record in great detail how each minute of his time was expended,' but he should 'identify the general subject matter of his time expenditures.'" *Hnot v. Willis Grp. Holdings Ltd.*, No. 01 Civ. 6558 (GEL), 2008 WL 1166309, at \*5 (S.D.N.Y. Apr. 7, 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. at 437 n. 12). "A time entry is vague if it lacks 'sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed.'" *Id.* (quoting *Mautner*

*v. Hirsch*, 831 F. Supp. 1058, 1077 (S.D.N.Y. 1993), *aff'd in relevant part*, 32 F.3d 37 (2d Cir. 1994)).

The Court finds that a reduction for vagueness is not justified in this case. Defendants identify a handful of time entries that they contend are vague because they "include generalized references to work on 'motions,' or 'depositions.'" (Dkt. #172 at p. 12). While it may be true that, when read in isolation, some entries appear vague, their nature or purpose becomes clear from reading the time entries immediately preceding or following them (*See* Dkt. #164, Exhibit C). Moreover, even entries that are vague when read in isolation are not particularly common in HWG's billing records; in most entries, the attorneys identified the task performed, the subject of the work, and the parties involved (*See* Dkt. #164, Exhibit C). HWG's billing records are not so vague are to preclude a review as to their reasonableness; and therefore, a reduction in fees is not justified on this ground. *See Hnot*, 2008 WL 1166309, at *5.

Traxxas also asserts that the Court should reduce Feld's attorneys' fees by forty to fifty percent because Feld's attorneys improperly block-billed their billing entries (*See* Dkt. #172 at pp. 13-14). The Second Circuit has "previously concluded that block-billing—the grouping of multiple tasks into a single billing entry—is not per se unreasonable." *Hines v. City of Albany*, 613 F. App'x 52, 54 (2d Cir. 2015); *see Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 266 (2d Cir. 2014). Although "block-billing is disfavored and may lack the specificity required for an award of attorneys' fees, it is not prohibited as long as the Court can determine the reasonableness of the work performed." *Adorno v. Port Auth. of N.Y. and N.J.*, 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010) (quoting *Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 05724 (PGG), 2010 WL 451045, at *8 (S.D.N.Y. Feb. 9, 2010) (internal quotations omitted)). However, courts may make reductions for block-billing because "block-billing makes it difficult if not impossible

for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided." *Manti's Transp.*, 2015 WL 1915004, at *11 (quoting *Linde v. Arab Bank, PLC*, 293 F.R.D. 138, 142 (E.D.N.Y. 2013)); *see Barclays Capital Inc.*, 2010 WL 2640095, at *4 (quotations and citations omitted). After reviewing the billing records, the Court finds that Feld's attorneys did not block bill to the extent that requires a reduction of the of the lodestar amount.

Traxxas also asserts that the Court should reduce Feld's attorneys' fees for the unsuccessful motion practice that was included in the attorneys' invoices. Specifically, Traxxas asserts that Feld billed "up to 241.8 hours" with the parties' venue battle; HWG billed "up to 463.7 hours" with the summary judgment motions and their Daubert challenges; and billed "up to 129.1 hours" with the reply and objections related to the Daubert challenges and the summary judgment motions (Dkt. #172 at p. 10). A plaintiff may be considered a prevailing party "if [it] succeeds on any significant issue in litigation which achieves some of the benefit the [party] sought in bringing suit." *Hensley*, 461 U.S. at 433. "[T]he fact that plaintiff[] did not prevail on every motion [it] brought or succeed in every aspect of [its] case is not, in and of itself, a basis for reducing the fees sought by [its] counsel. Attorney's fees are properly awarded even for plaintiff's unsuccessful motion practice." *Alvardo v. Five Town Car Wash Inc.*, No. 07 Civ. 3629 (ILG), 2015 WL 5437254, at *5 (E.D.N.Y. July 23, 2015) (quoting *Gortat v. Capala Bros.*, 2014 WL 3818614, at 11 (E.D.N.Y. Augh. 4, 2014)). Additionally, the cases cited by Traxxas excluded time spent on unsuccessful efforts, not because the motions were unsuccessful, but because the court in those cases, found the motion practice to be without merit. *See Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp.*, No. 04 Civ. 3854 (LAK)(AJP), 2008 WL 4833025, at *4 (S.D.N.Y. Nov. 3, 2008); *Berry v. N.Y. State Dept. of Corr. Servs.*, 947

F. Supp. 647, 651 (W.D.N.Y. 1996); *Samborski v. Linear Abatement Corp.*, 96 Civ. 1405, 1999 WL 739543, at *2 (S.D.N.Y. Sept. 22, 1999). The Court finds that the Feld's motions were filed in good faith and as Feld's ultimate claim was successful, Feld's attorneys may bill for the hours they worked on the motions, even if the motions, themselves, were unsuccessful.[12]

Traxxas also asserts that the Court should also reduce Feld's attorneys' fees for the travel time HWG's attorneys included in their billing statements (*See* Dkt. #172 at p. 13).[13] Traxxas also asserts that Feld's "selection of Virginia counsel combined with its refusal to employ any billing judgment resulted in significant overbilling associated with 'travel' time[,]" as Texas counsel was available to represent Feld's needs and would have avoided the travel time (Dkt. #182 at p. 5). New York courts "regularly reduce attorneys' fees by 50 percent for travel time." *LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010); *see Wilder v. Bernstein*, 975 F. Supp. 276, 283-84 (S.D.N.Y. 1997); *Lilly v. Cty. of Orange*, 910 F. Supp. 945, 951 (S.D.N.Y. 1996). Although the "time spent by attorneys in transit 'may [be] beneficial, [] it probably [is] not as productive as time at the office or in court.'" *Jennette v. City of New York*, 800 F. Supp. 1165, 1170 (quoting *Soc'y of Good Will to Retarded Children, Inc. v. Cuomo*, 574 F. Supp. 994, 998 (E.D.N.Y. 1983), *order vacated on other grounds*, 737 F.2d 1253 (2d Cir. 1984), *order reinstated on remand*, 103 F.R.D. 169 (E.D.N.Y. 1984)). The Court finds that travel time should be awarded at fifty percent of the determined hourly rates. However, after reviewing HWG's billing records, the Court finds that the attorneys' travel charges are block-

---

[12] Traxxas asserts that this was a "straight-forward breach of contract case[.]" (Dkt. #172 at p. 2). However, the Court finds that the case had several complex issues that required extensive briefing from the parties.

[13] It appears that New York courts determine the appropriateness of travel time in their reasonable hourly rate determinations. *See LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010); *see also Jennette v. City of New York*, 800 F. Supp. 1165, 1170. The Court finds that Feld's arguments regarding charged travel time fall more logically within the hours reasonably expended, and thus, for purposes of this order will discuss Feld's charged travel time within that section.

billed with other relevant charges; and therefore, the Court will deduct 10% of the total lodestar amount to account for the difference in the hourly rate for billed travel time.[14]

Therefore, the Court finds the total reasonable hours to be as follows:

| Individual | Hours Billed | Total Reasonable Hours[15] |
| --- | --- | --- |
| **HWG** | | |
| Charles Kimmett | 1,468.5 | 1,321.7 |
| Walter Anderson | 1,144.1 | 1,029.7 |
| Susannah Norvell | 1,000.5 | 900.5 |
| John Grimm | 918.3 | 826.5 |
| | | |
| **Gardere** | | |
| Joanne Early | 38.4 | 38.4 |
| Ruth Lee | 63.7 | 63.7 |
| | | |
| **Total** | | **4,180.5** |

**Hourly Rate**

Feld asserts that "HWG's engagement used a rate schedule and applied a blended $417 hourly attorney rate using a tiered structure for blocks of attorney hours expended in each calendar month." (Dkt. # 164 at p. 7). Feld ultimately asserts that its fee agreement structure resulted in an approximate $350 hourly attorney rate (Dkt. #164 at p. 7). Feld also asserts that the following rates are reasonable for the work done by the attorneys at Gardere:

Early: $515-525/hour

Lee: $260-300/hour

---

[14] Because '[c]ourts in [the Second] Circuit regularly reduce attorney's fees by 50% for travel time,' *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 213 n. 6 (S.D.N.Y. 2001), it is not appropriate to lump travel time together with fully compensable time. *See Spalluto v. Trump Int'l Hotel & Tower*, 2008 WL 4525372, at *11 (S.D.N.Y. Oct. 2, 2008) (explaining that a reduction in the hourly rate applied to time traveling is warranted "because of the lack of productivity that results when an attorney travels to appointments."). In the present case, Plaintiff's travel time is block billed, such as the entry, "Attend S. Wentzel deposition; travel to Kalamazoo Michigan." (Dkt. #164, Exhibit C). The Court finds that an across the board deduction of the total lodestar amount by 10% is necessary because Plaintiff "mix[es] together tasks that [are] not all compensable, or not all compensable at the same rate." *See Hnot*, 2008 WL 1166309, at *6.

[15] The "Total Reasonable Hours" includes the 10% reduction that the Court has found necessary for HWG's failure to exercise billing judgment.

(Dkt. #164, Exhibit A at p. 3, Exhibit B).

"A reasonable hourly rate is one that is consistent with the 'prevailing market rates in the relevant community,' that is, what similarly skilled attorneys in the area would charge for similar work." *King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 169 (E.D.N.Y. 2004) (quoting *Blum*, 465 U.S. at 895 & n. 11; *see Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058-59 (2d Cir. 1989), *cert. denied.*, 496 U.S. 905 (1990); *Cohen v. W. Haven Bd. of Police Comm'rs*, 638 F.2d 496, 506 (2d Cir. 1980). "The fee applicant shoulders the burden of establishing that the prevailing market rate and that the requested hourly rates are similar." *King*, 325 F. Supp. 2d at 169 (citing *Blum*, 465 U.S. at 896 n. 11). The fee applicant can meet that burden by showing the hourly rate charged by the attorneys who did the work and establishing the rates that attorneys in the relevant community regularly charge for similar work. *See id.* Where the party seeking an award has submitted no evidence of the prevailing market rate for attorneys of like skill litigation similar cases, it is within the court's discretion to determine a reasonable hourly rate. *Moreno v. Empire City Subway Co.*, No. 05 Civ. 7768 (LMM)(HBP), 2008 WL 793605, at *7 (S.D.N.Y. Mar. 26, 2008); *see Stair v. Calhoun*, 722 F. Supp. 2d 258, 274 (E.D.N.Y. 2010); *Trs. of the Local 813 Ins. Tr. Fund v. Tres Chic, Ltd.*, No. 09 Civ. 5452 (FB)(JMG), 2010 WL 3782033, at *4 (E.D.N.Y. Aug. 16, 2010), *report and recommendation adopted as modified on other grounds*, 2010 WL 3746942 (E.D.N.Y. Sept. 20, 2010). Courts may also rely on their "own knowledge of comparable rates charged by lawyers in the district." *LV*, 700 F. Supp. 2d at 514 (quoting *Robinson v. City of New York*, No. 05-9545, 2009 WL 3109846, at *4 (S.D.N.Y. Sept. 29, 2009) (internal quotation marks and citation omitted)).

In the present case, HWG charged Feld a "blended rate" for its services. "Although the Second Circuit has not endorsed the use of a blended rate, courts in [the Second Circuit] have

awarded attorneys' fees based on blended rates in cases involving law firms where attorneys with different billing rates have worked together on a case." *Akman*, 2013 WL 4039370, at *2; see *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 98 (2d Cir. 2006); *see, e.g., First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696, 2013 WL 950573, at *7 (E.D.N.Y. Mar. 12, 2013); *Jackson Hewitt, Inc. v. Excellent Prof'l Servs., LLC*, No. 08-CV-5237, 2010 WL 5665033, at *4 (E.D.N.Y. Nov. 8, 2010, *report and recommendation adopted*, 2011 WL 317969 (E.D.N.Y. Jan. 31, 2011); *Carter v. Copy Train, Inc.*, No. 02-CV-7254, 2004 WL 690746, at *1 (S.D.N.Y. Mar. 30, 2004).

Feld asserts that it used a blended rate of $417 hourly attorney rate when accounting for its attorneys' fees (Dkt. #264 at p. 7). It also asserts that its tiered rate structure resulted in an approximate $350 attorney rate (Dkt. #264 at p. 7). The Court finds that the $350 attorney rate is appropriate for Mr. Kimmett; however, based upon comparable rates within the district, the $350 blended rate is not appropriate for Mr. Anderson, Mr. Grimm, or Ms. Norvell.[16] The Court determines that the following rates should be applied in the lodestar calculation for each of the following individuals:

| Attorney | Rate ($/hr) |
| --- | --- |
| Charles Kimmett (Partner) | $350 |
| Walter Anderson (Partner) | $300 |
| Susannah Norvell (Associate) | $250 |
| John Grimm (Associate) | $250 |

---

[16] Feld did not provide the Court with evidence that its hourly rate was reasonable within the Eastern District of Texas. *See King*, 325 F. Supp. 2d at 169 (citing *Blum*, 465 U.S. at 896 n. 11) ("The fee applicant shoulders the burden of establishing that the prevailing market rate and that the requested hourly rates are similar."). In its reply, Feld cites to the case, *United States ex rel. Joshua Harman v. Trinity Indus., Inc.*, No. 2:12-CV-89 (E.D. Tex. Jan. 7, 2015), for the proposition that a reasonable hourly rate within the Eastern District of Texas could average $573 per hour and approximately $1,000 per hour for the lead partner (Dkt. #178 at pp. 4-5). However, the case cited by Plaintiff was a qui tam action, and appears to the Court to be a more complicated matter than the one currently before the Court. Therefore, when determining an appropriate hourly rate within this district, the Court will look to the case law presented by *McClain v. Lufkin Indus., Inc.*, No. 9:97-CV-63, 2010 WL 455351 (E.D. Tex. Jan. 15, 2010), *aff'd*, 649 F.3d 374 (5th Cir. 2011) and *Champion v. ADT Sec. Servs., Inc.*, No. 2:08-CV-417-TJW, 2010 WL 4736908 (E.D. Tex. Nov. 16 2010).

Likewise, the Court finds that the hourly rates charged by the attorneys at Gardere were not reasonable within the relevant legal market.[17]  The attorneys at Gardere were also assisted by one legal assistant, Nita Overton ("Overton"), who charged an hourly billing rate of $245[18], and research professionals, Jeff Davis ("Davis") and Sean Gasser ("Gasser"), who charged an hourly billing rate of $150.  The Court finds that the rate charged for Davis and Gasser's work was reasonable within the relevant legal market.  The Court finds the following rates to be appropriate within the relevant legal market:

| Individual | Rate ($/hr) |
|---|---|
| Joanne Early (Partner) | $350 |
| Ruth Lee (Associate) | $200 |
| Jeff Davis (Research Professional) | $150 |
| Sean Gasser (Research Professional) | $150 |

**Lodestar Calculation**

The Lodestar is calculated by multiplying the rate for each individual by the number of hours worked by that individual.

| Individual | Rate ($/hr) | Net Hours | Billable Amount |
|---|---|---|---|
| Charles Kimmett | 350 | 1321.7 | $426,595 |
| Walter Anderson | 300 | 1029.7 | $308,910 |
| Susannah Norvell | 250 | 900.5 | $225,125 |
| John Grimm | 250 | 826.5 | $206,625 |
| Joanne Early | 350 | 38.4 | $13,440 |
| Ruth Lee | 200 | 63.7 | $12,740 |
| Sean Gasser | 150 | 1 | $150 |
| Jeffrey Davis | 0.6 | 150 | $90 |
| **Total** | | | **$1,193,675** |
| **Total after 10% deduction for travel fees** | | | **$1,074,307.50** |

---

[17] The Court finds that the rate charged by the Gardere attorneys are not reasonable because Feld did not present sufficient evidence that Gardere's charged rates were reasonable within the relevant legal market.

[18] Based upon the Court's review of Gardere's billing records, it appears that Gardere did not include any time from Ms. Overton on its bills.  Therefore, the Court will not consider Ms. Overton's hours or hourly rate in its determination of the lodestar calculation.

**Adjustment Due to the Johnson Factors**

Once a claimed hourly rate and the claimed number of hours has been found to be reasonable, the product is presumed to be a reasonable fee. *Blum*, 465 U.S. at 897. Therefore, after calculating the lodestar, courts may adjust the figure up or down based on factors such as the difficulty of the questions presented, the skill required to perform the legal services properly, the preclusion of other employment by the attorney due to acceptance of the case, and the results obtained. *See Goldberg v. Blue Ridge Farms, Inc.*, No. CV-04-5098(CPS), 2005 WL 1796116, at *6 (E.D.N.Y. July 26, 2005).

Most of the *Johnson* factors were taken into account in calculating the lodestar, so the Court will not adjust the lodestar based on those factors. Several of the factors were inherently considered when determining the appropriate hourly rate of the attorneys. Those factors include: the novelty and difficulty of the issues in the case; the skill required to perform the legal services properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; the experience, reputation, and ability of the attorneys; and the "undesirability" of the case. The first factor, the time and labor required to represent the client, was directly considered when determining the lodestar because the lodestar is calculated on the basis of the hours spent on the case. The eighth factor, the amount involved and the results obtained, has also already been considered by the Court. Finally, the twelfth factor, awards in similar cases, was directly considered when determining the lodestar because the Court considered other similar cases when determining a reasonable hourly rate.

In considering the four *Johnson* factors that were not taken into account in the lodestar analysis, the Court concludes none of these factors warrant an adjustment to the lodestar. The sixth factor, whether the fee is fixed or contingent, should not alter the lodestar. The seventh

factor, the time limitations imposed by the client, does not warrant altering the lodestar. This case proceeded over an approximate one-and-a-half year period between when the lawsuit was filed and when it was tried. This is ample time for the attorneys on both sides to adequately represent their clients in the case, so no time limitation in this case warrants adjustment to the lodestar. The eleventh factor, the nature and length of the professional relationship with the client, does not warrant adjustment to the lodestar.

Therefore, the Court concludes that the lodestar calculated by the Court need not be altered based on the *Johnson* factors. Plaintiffs are awarded $1,074,307.50.

**Non-Taxable Costs**

In addition to attorneys' fees, Feld also seeks $203,660.01 in non-taxable costs. Motions for related non-taxable expenses are covered by Rule 54(d)(2) of the Federal Rules of Civil Procedure, which provides in pertinent part:

> Unless a statute or a court order provides otherwise, the motion [for attorneys' fees and related non-taxable costs] must be filed no later than 14 days after the entry of judgment; specify the judgment and the statute, rule, or other grounds entitling the movant to the award; state the amount sought or provide a fair estimate; and disclose, if the court so orders, the terms of any agreement about fees for services for which the claim is made.

FED. R. CIV. P. 54(d)(2). "Non-taxable costs are shifted to a losing defendant when a statute provides for the shifting of attorneys' fees, as long as these costs are '[i]dentifiable, out-of-pocket expenses,' as opposed to general overhead costs which are incorporated into an attorney's hourly rate." *Nam Yang v. ACBL Corp.*, No. 04 Civ. 8987 (LBS), 2006 WL 435720, at *3 (S.D.N.Y. Feb. 22, 2006) (quoting *Kuzma v. I.R.S.*, 821 F.2d 930, 933 (2d Cir. 1987)); *see Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987). Feld asserts that it is entitled to non-taxable expenses under the terms of the License Agreement, which states, "the non-prevailing party shall promptly reimburse the prevailing parties for the

prevailing party costs and expenses, including reasonable attorneys' fees, incurred in connection with said litigation." (Tr. Ex. 11 at ¶ 14).[19]

Feld asserts that its non-taxable expenses include the following: (1) travel expenses for Feld's witnesses and counsel; (2) process servers; (3) a consulting expert; (4) a trial expert; (5) trial technical support; and (6) Traxxas vehicles, which Feld purchased for use during trial (Dkt. #164 at p. 10). Traxxas requests that the Court reduce Feld's non-taxable expenses by $127,418.51 (Dkt. #172 at p. 15). Traxxas argues that following regarding Feld's request for travel expenses:

> (1) meals, travel, hotels, and lodging for out of town attorneys are not recoverable; [and] (2) [Feld's] travel expenses (for which there is no legal authority for such recovery); (3) costs associated with an out of town legal team; ([4]) costs associated with unnecessary attendance of attorneys on non-Texas based trips; and ([5]) costs associated with unsupported expenses such as non-Stampede R/C Vehicles, and shipping of items to Dallas.

(Dkt. #172 at p. 15). Traxxas also asserts that it is not conceding that Feld is entitled to recover the additional $76,241.50, but argues that it has only addressed those costs it was able to calculate from Feld's documentation (Dkt. #172 at p. 15 n. 43).

New York courts have found that most administrative costs are recoverable. *See, e.g.*, *Simmons v. New York City Transit Auth.*, No. CV-02-1575 (CPS)(RLM), 2008 WL 630060, at *7 (finding that applicant could recover costs related to filing fees, process servers, postage travel

---

[19] As a preliminary matter, Traxxas argues that Feld "failed to submit at trial any issue of 'cost' or 'expenses' under the License Agreement other than the audit fees, and thus has waived any such claim, other than what is allowed under [Federal Rule of Civil Procedure] 49 and 54." (Dkt. #172 at p. 15). To the extent that Traxxas is arguing that Feld's claim for non-taxable costs should have been submitted to the jury, the Court finds that Traxxas has waived its objection when it did not object during the Court's charge conference. Additionally, New York law states that the reasonableness of attorneys' fees and costs incurred with such attorneys' fees are to be determined by the Court. *See Paramount Comm'ns v. Horsehead Indus.*, 731 N.Y.S.2d 433 (N.Y. App. Div. 2001) ("We are in accord with *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir.), insofar as it holds that when a contract provides for an award of attorneys' fees, there is no right to a jury trial on the issue of the reasonable value of such fees."). Therefore, the Court finds that because reasonable attorneys' fees and costs were agreed to under the License Agreement, it is within the Court's discretion to make a determination as to whether Feld can recover its non-taxable costs.

and photocopying), *vacated and remanded on other grounds*, 575 F.3d at 170; *Cho*, 542 F. Supp. 2d at 212 (finding that applicant could recover costs related to shipping, reproduction, telephone, facsimile, postage, deposition services, deposition transcripts, and legal databases); *Molefi v. Oppenheimer Tr.*, No. 03 CV 5631 (FB)(VVP), 2007 WL 538547, at *8 (E.D.N.Y. Feb. 15, 2007) (finding that applicant could recover costs related to mailings, photocopies, and court fees).

After reviewing the relevant pleadings, it appears to the Court that a large portion of the costs counsel seeks to recover are for airfare, hotel and meals for HWG attorneys and Feld representatives. The Court finds that these expenses should be denied reimbursement. Although it is Feld's right to retain counsel of its choice, it has failed to explain the need for out-of-state counsel when presumably, a local attorney with similar trial experience could have been located. *See Simmons*, 2008 WL 630060, at *7; *but see Access 4 All, Inc. v. 135 W. Sunrise Realty Corp.*, 2008 WL 4453221, at *15 (E.D.N.Y. Sept. 30, 2008) (awarding travel expenses despite local counsel's appearance at a conference, "especially consider" that the attorney did not bill for his travel time or the time to attend the conference.). In the present case, HWG billed for its travel time, which the Court has already granted. The Court does not see that the travel expenses incurred by Feld's counsel should be reimbursed. However, regarding the other non-taxable costs Feld seeks for reimbursement, the Court finds that Feld has not provided sufficient documentation for the Court to assess whether it is entitled to the non-taxable expenses it requests. Although Feld provided invoices, the Court is unable from its review to discern whether the costs should be reimbursed to Feld. Therefore, the Court finds that Feld is not entitled to its non-taxable expenses.[20]

---

[20] Feld also requests that the Court award "interest at the rate of twelve percent (12%) *per annum*" on the incurred attorneys' fees and costs because they are payments due under the License Agreement (Dkt. #164 at p. 10). After

*Feld's Supplemental Motion for Attorneys' Fees and Expenses (Dkt. #184)*:

In its supplemental motion, Feld argues that FMS has incurred additional attorneys' fees in the amount of $183,123.40, which reflects 473.2 hours of attorney work and 24 hours of out-of-town paralegal work relating to the trial (Dkt. #184 at p. 1)[21]. Feld also requests that the Court grant it $168,500 for anticipated appellate fees (Dkt. #184 at p. 2).

Traxxas asserts that Feld's requested attorneys' fees are unreasonable for the following reasons: (1) Feld seeks to recover travel time; (2) Feld seeks to recover time spent on non-legal work; (3) Feld's billing is improperly block billed; (4) Feld's billing is vague from over redactions; (5) Feld's billing lacked billing judgment from excessive timekeepers (Dkt. #186 at p. 2).

For the reasons stated above, the Court finds that Feld's billing records are not overly block billed. The Court also finds that Feld may recover its travel time, but at a 50% hourly rate. *See Gonzalez*, 147 F. Supp. 2d at 213 n. 6. However, because the travel time is block billed with entries that HWG attorneys should receive full compensation, the Court finds it is appropriate to make a 2% deduction from the total amount of fees to be awarded to Feld. However, the Court will address Feld's request to recover time spent on non-legal work and Feld's billing being vague for over-redactions below.

Traxxas argues that Feld cannot recover time its attorneys billed for non-legal work. Specifically, Traxxas identifies work performed by Feld's paralegal during trial (*See* Dkt. #186 at p. 4). "The Supreme Court has determined that 'purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.'" *Nwagboli v. Teamwork Transp.*

---

reviewing the License Agreement, the Court finds that the attorneys' fees and costs are not considered payments due under the License Agreement, and therefore, will not apply a twelve percent *per annum* interest rate to the awarded attorneys' fees and costs.

[21] After reviewing HWG's billing records, the Court only calculates 447.8 hours billed for attorney time. Therefore, when determining the lodestar calculation, the Court will use its calculation of 447.8 hours of attorney time.

*Corp.*, 2009 WL 4797777, at *11 (S.D.N.Y. Dec. 7, 2009) (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 (1989)). "[C]ertain tasks, such as filing, delivery, and service of papers do not properly come under the heading of hours 'expended on the litigation', and are not generally considered recoverable expenditures of time." *Nwagboli*, 2009 WL 4797777, at *12 (quoting *Hurley v. Coombe*, No 77 Civ. 3847, 1996 WL 46889, at *7 (S.D.N.Y. Feb. 6, 1996) (internal quotations omitted)); *see Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008) (labeling "organizing case files [] and preparing documents for mailing" as "clerical tasks"). The Court finds that several of HWG's invoices reflect non-legal work, which was billed at an attorney or a paralegal hourly rate. Some examples include:

| 09/01/2015 | WEA | Prepare for and attend trial; remove exhibits from courtroom | 8.90 |
| 09/02/2015 | WLH | Take down and clean up war room; ship supplies from Sherman back to DC office. | 4.00 |
| 09/02/2015 | SJN | Confer with team to dismantle trial setup and organize demonstrative exhibits; travel to Washington, D.C. | 6.50 |
| 09/02/2015 | CTK | Pack trial materials for return shipment from Sherman, Texas; return travel from Sherman, Texas; exchange emails with opposing counsel re trial. | 8.00 |

(Dkt. #184, Exhibit 2). Therefore, the Court finds that a 5% reduction is appropriate to account for the non-legal work that Feld's attorneys included within their billing statements.

Traxxas also asserts that a reduction is justified because many of HWG's billing entries are vague due to over redaction. The Court finds that a reduction for vagueness is not justified in this case. While it may be true that, when read in isolation, some entries appear vague, for most the nature or purpose becomes clear when reading the time entries immediately preceding or

following them (*See* Dkt. #184, Exhibit 2). Moreover, even the entries that are vague when read in isolation are not particularly common in HWG's billing records, as the attorneys identified the task performed, the subject of the work, and the parties involved (*See* Dkt. #184, Exhibit 2). HWG's billing records are not so vague as to preclude a review of their reasonableness; and therefore, no reduction in fees is justified on that ground. *See Hnot*, 2008 WL 1166309, at *5. However, during the Court's review of HWG's billing records, the Court did find one entry that it found was over redacted.

    9/23/2015      JRG            [redaction]            3.60

As the Court cannot determine the task performed or the subject of the work, the Court finds that this entry is overly vague, and thus will strike this entry from its consideration.

Traxxas also asserts that HWG failed to exercise billing judgment, which is represented by the overstaffing of attorneys on the case (*See* Dkt. #186). Feld asserts that "HWG exercised billing judgment throughout the case, as demonstrated by the discounts inherent in the tiered structure and the additional discounts given. [Feld's] lead counsel exercised billing judgment by reviewing each bill and making reduction where appropriate." (Dkt. #187 at p. 2).

The Court finds that Feld failed to demonstrate that it exercised proper billing judgment with respect to its invoices. Feld argues that the tier structure inherently gives Feld a discount and demonstrates its billing judgment; however, the Court is unable to see the amount of hours discounted through the tiered structure. Through the Court's review of HWG's billing entries, the Court can see that HWG wrote off its paralegal time from the billing, as those hours are not included in the request for attorneys' fees; however, the Court finds that Feld still did not exercise sufficient billing judgment. Thus, the Court will discount Feld's hours at 10%.

Therefore, the Court finds that the reasonable hours for the HWG attorneys are as follows:

| Individual | Total Hours | Total After 10% Deduction |
|---|---|---|
| Charles Kimmett (Partner) | 125 | 112.5 |
| Walter Anderson (Partner) | 32.7 | 29.43 |
| Susannah Norvell (Associate) | 100.5 | 90.45 |
| John Grimm (Associate) | 113.7 | 102.33 |
| Will Sullivan (Associate) | 62.3 | 56.07 |
| XiXi Tian (Associate) | 10 | 9 |
| William Hupp  (Paralegal) | 24 | 21.6 |
| **Total** | **468.2** | **421.38** |

**Hourly Rate**

The Court will use the same attorney hourly rate that it used in Feld's Motion for Attorneys' Fees (Dkt. #164).  Because HWG did not include paralegal time in its original billing entries, the Court did not determine a reasonable hourly rate for paralegals.  In the present case, HWG charged an hourly rate of $125 for its paralegal, William Hupp's work (*See* Dkt. #184, Exhibit 2).  The Court finds that the $125 hourly rate is reasonable for purposes of the lodestar calculation.

**Lodestar Calculation**

The Lodestar is calculated by multiplying the rate for each individual by the number of hours worked by that individual.

| Individual | Rate ($/hr) | Net Hours | Billable Amount |
|---|---|---|---|
| Charles Kimmett | 350 | 112.5 | $39,375 |
| Walter Anderson | 300 | 29.43 | $8,829 |
| Susannah Norvell | 250 | 90.45 | $22,612.50 |
| John Grimm | 250 | 102.33 | $25,582.50 |
| Will Sullivan | 250 | 56.07 | $14,017.50 |
| Xixi Tian | 200 | 9 | $1,800 |
| William Hupp | 125 | 21.6 | $2,700 |
| **Total** | | | **$114,916.50** |
| **Total after reduction for travel time and non-legal work** | | | **$106,872.34** |

**Adjustment Due to the Johnson Factors**

Feld does not assert that any adjustment is required to the lodestar calculation. After reviewing the *Johnson* factors, the Court finds that the lodestar calculated by the Court need not be altered. Therefore, Feld should be awarded $106,872.34 in attorneys' fees.

Feld also requests $168,500 in anticipated appellate fees (Dkt. #184 at p. 2). Traxxas asserts that the issue of appellate fees is not ripe and Feld has not substantiated its basis to receive conditional appellate fees (Dkt. #186 at p. 6). The Court will address this issue following the resolution of an appeal. *Instone Travel Tech. Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 433 (5th Cir. 2003); *see also Carroll v. Sanderson Farms, Inc.*, No. H-10-3108, 2014 WL 549380, at *5 (S.D. Tex. 2014) (declining to award conditional appellate fees before the appeal because the request "is merely a speculative dollar figure without any information by which the Court could determine whether the amount requested is reasonable.").

**Non-Taxable Expenses**

Feld also requests that the Court grant it $2,548.30 in costs related to transcripts needed to respond to Traxxas' Motion for Judgment as a Matter of Law (Dkt. #184). As stated above, the License Agreement stated that, "the non-prevailing party shall promptly reimburse the prevailing parties for the prevailing party costs and expenses, including reasonable attorneys' fees, incurred in connection with said litigation." (Tr. Ex. 11 at ¶ 14). As Traxxas does not appear to oppose Feld's request, the Court finds that Feld should be awarded its $2,548.30, which it incurred to obtain a transcript to respond to Traxxas' Motion for Judgment as Matter of Law.

*Feld's Motion for Bill of Costs (Dkt. #167)*

Under Federal Rule of Civil Procedure 54(d), costs, other than attorney's fees, should be granted to the prevailing party. Title 28, United States Code, Section 1920 sets forth which costs are taxable. Section 1920 allows recovery of the following costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs for making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title [28 U.S.C. § 1923]; and
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 U.S.C. § 1828].

28 U.S.C. § 1920.

The party seeking to recover costs has the burden of producing evidence properly documenting and establishing the costs incurred. *Fogelman v. ARAMCO*, 920 F.2d 278, 285-86 (5th Cir. 1991); *Faculty Rights Coal. v. Shahrokhi*, No. H-04-2127, 2005 WL 1924192, at *1 (S.D. Tex. Aug. 10, 2005). The district court has discretion to determine whether the prevailing party is entitled to an award of costs for claimed expenses. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1049 (5th Cir. 1998); *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, No. Civ. A. H-01-4242, 2006 WL 734396, at *1 (S.D. Tex. Mar. 22, 2006). In *Crawford*, the Supreme Court went on to hold that a federal court may refuse to tax costs in favor of the prevailing party. *Crawford*, 482 U.S. at 442. A court "may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so." *Pacheco v. Meneta*, 448 F.3d 783, 794 (5th Cir. 2006) (citation omitted). The factors to consider in withholding costs include: (1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult

legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources. *Id.* (citing 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2668, at 234 (1998)). The Fifth Circuit went on to note that "every case cited by Wright and Miller for this proposition denies costs on the basis of *both* the losing party's good faith *and* some other one or more of the factors listed above." *Id.* (citing to 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2668, at 238 (1998) (italics in original)). The Fifth Circuit further stressed that a losing party's good faith alone is insufficient to justify the denial of costs to the prevailing party. *Id.*

Feld seeks $41,615.61 in taxable costs from Traxxas (Dkt. #167 at p. 1). Of the amount Feld requests, Traxxas consents to $20,168.85 (Dkt. #171 at p. 1). Therefore, the Court finds that $20,168.85 of Feld's costs should be taxed to Traxxas as it is undisputed.[22]

Feld seeks $800 in clerk's fees (Dkt. #167 at p. 2; *see* 28 U.S.C. § 1920(1)). Traxxas disputes $400 in the clerk's fees requested (Dkt. #171 at p. 11). Feld asserts that the fees represent "two $400 filing fees associated with this matter:  one for filing its complaint in the U.S. District Court for the Eastern District of Virginia, and one for removing this matter's companion case to this Court." (Dkt. #167 at p. 2). Traxxas asserts that Feld should not be able

---

[22] As a preliminary matter, in its sur-reply Traxxas asserts that Feld "filed no declaration in support of the Motion in Support of Bill of Costs[.]" (Dkt. #180 at p. 1 n. 1). The Court assumes that Traxxas is asserting that Feld's Motion for Bill of Costs is not properly verified pursuant to 28 U.S.C. § 1924. Section 1924 mandates:

> Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.

However, the Court finds that the attached declaration filed with Feld's Bill of Costs suffices for purposes of verification. The Bill of Costs contains a declaration that is signed by Kimmett, and states, "I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which fees have been charged were actually and necessarily performed." (Dkt. #167, Exhibit 5). Therefore, the Court will overrule Traxxas' objection. Additionally, after reviewing the Supplemental Declaration, the Court finds that Feld does not make new arguments, but is merely supplementing its original arguments; and therefore, as the Supplemental Declaration does not prejudice Traxxas, the Court will overrule Traxxas' objection and will consider Feld's Supplemental Declaration.

to recover one "$400 related to its failed attempt to forum shop."[23]   However, the Court finds that Feld's filing was not frivolous in regards to both its complaint in the Eastern District of Virginia and its motion to transfer venue.  Feld has submitted invoices showing the $400 filing fees, and therefore, the Court finds that the $400 filing fee that was opposed by Traxxas should be taxed as a cost to Traxxas.  *See Hartnett v. Chase Bank of Tex. N.A.*, No. 3-98-CV-1061-L, 1999 WL 977757, at *2 (N.D. Tex. Oct. 26, 1999).

Feld seeks $32,285.20 for the costs of transcripts and video depositions necessarily obtained for use in this case (Dkt. #167 at p. 2).  Of this amount, Traxxas does not dispute $15,717.95 of the transcripts and video depositions costs requested by Feld (Dkt. #171 at p. 1).  Traxxas asserts that Feld cannot recover the additional $16,567.25 because it has not demonstrated that the depositions were necessary (Dkt. #171 at p. 2).

"To obtain reimbursement for depositions under § 1920(2), the prevailing party must demonstrate to the court's satisfaction that the depositions were necessary to the party's case." *Vanderbilt Mortg. & Fin., Inc. v. Flores*, No. C-09-312, 2011 WL 2160928, at *10 (S.D. Tex. May 27, 2011) (citing *Fogleman*, 920 F.2d at 285-86).  "If at the time the deposition is taken, the deposition could 'reasonably be expected to be used for trial preparation, rather than merely for discovery, it may be included in the costs of the prevailing party.'"  *Id.*  "The mere recitation with talismanic regularity of the phrase 'necessarily obtained for use in the case' [is not sufficient].  Some further showing is necessary."  *Id.* (quoting *Am. Key Corp. v. Cumberland Assocs.*, 102 F.R.D. 496, 499 (N.D. Ga. 1984)).  "The Court must make an express finding of fact that the evidence produced or the copies made were actually necessary."  *Id.* (quoting

---

[23] Traxxas does not state whether it opposes Feld's filing of a second action in the Eastern District of Virginia or whether it opposes Feld's motion to transfer venue; therefore, the Court will address both.

*Datapoint Corp. v. Picturetel Corp.*, No. 3:93-CV-2381-D, 1998 WL 401630, at *5 (N.D. Tex. July 9, 1998)).

First, Traxxas asserts that Feld cannot recover $2,108.50 for the depositions that it knew were unnecessary (Dkt. #171 at p. 4). Specifically, it asserts that the depositions of Mike Stasey ("Stasey"), Lisa Lake ("Lake"), and Luke Mattarano were unnecessary (Dkt. #171 at p. 4). "Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court." *Jerry v. Fluor Corp.*, No. Civ. A H-10-1505, 2012 WL 4664423, at *3 (S.D. Tex. Oct. 2, 2012) (quoting *Fogelman*, 920 F.2d at 285-86). "Costs associated with a deposition taken primarily for discovery or investigative purposes are not recoverable." *Hartnett*, 1999 WL 977757, at *3 (citing *Fogelman*, 920 F.2d at 285; *Card v. State Farm Fire & Cas. Co.*, 126 F.R.D. 658, 661-62 (N.D. Miss. 1989)). "However, costs should not be disallowed merely because the deposition was not ultimately used at trial or in connection with a dispositive motion. Such costs are taxable if the deposition appeared reasonably necessary at the time it was taken." *Id.* (citing 10 C. Wright & A. Miller, Federal Practice & Procedure § 2676 at 424 (3d ed. 1998)). The Court finds that Feld can recover costs on the depositions of Stasey, Lake, and Luke Mattarano, as Traxxas included them as "persons [who], although not called as witnesses, may be mentioned in documents or testimony." (Dkt. #137 at p. 8). The Court finds that if Traxxas asserted in its pretrial order that these individuals may be mentioned during trial, it would be reasonably necessary that Feld would want to depose Stasey, Lake, and Luke Mattarano. Therefore, the $2,108.50 cost for the depositions should be taxed to Traxxas.

Traxxas also asserts that Feld cannot recover $9,300 for unnecessary, duplicative deposition formats (Dkt. #171 at p. 5). Specifically, Traxxas argues the following: (1) Feld

cannot recover video expenses for witnesses under its control; and (2) Feld cannot recover video expenses for witnesses it could subpoena (Dkt. #171 at pp. 6-7).

Under 28 U.S.C. § 1920(a), Feld is entitled to "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." However, the use of "printed or electronically recorded transcripts" does not mean that costs may be taxed for only one of the two recited types of transcripts." *See Eolas Techs. Inc. v. Adobe Sys., Inc.*, 891 F. Supp. 2d 803, 805 (E.D. Tex. 2012). One court in this district has found that "[w]hen courts have allowed the recovery of costs for both a printed deposition transcript and a videotaped deposition, it has often been the case that the video deposition was played at trial." *Kroy IP Holdings LLC v. Safeway, Inc.*, No. 2:12-CV-800-WCB, 2015 WL 4776501, at *5 (E.D. Tex. Aug. 13, 2015). "Costs for both printed transcripts and videotapes of depositions have also been awarded when the circumstances of the case have made it appear reasonably necessary, at the time of the deposition, to have a videotape of the deposition." *Id.*; *see Baisden v. I'm Ready Prods.*, 793 F. Supp. 2d 970, 977 (S.D. Tex. 2011) (awarding costs for video depositions where the only depositions that had been videotaped were depositions of witnesses whose live attendance at trial was uncertain or witnesses whose credibility was sharply disputed); *Allstate Ins. Co. v. Plambeck*, 66 F. Supp. 3d 782, 789-90 (N.D. Tex. 2014) (awarding costs for video depositions of witnesses who, at the time of the depositions, were reasonably expected to be absent from trial, such as when the witnesses were outside the court's subpoena power).

After reviewing the relevant pleadings, the Court finds that Feld may recover both the printed transcript and the videotape of the deposition for the Abernethy deposition. Feld used the Mark Abernethy ("Abernethy") videotape deposition in support of its Motion for Summary Judgment (Dkt. #177, Exhibit 3). Therefore, the Court finds that although it was not used during

the trial itself, it was "necessarily obtained for use in the case." *See Eolas Techs. Inc.*, 891 F. Supp. 2d at 805; *see also Kroy IP Holdings LLC*, 2015 WL 4776501, at *5. However, the Court finds that Feld may not recover both the printed transcript and the videotape of the deposition for Murray, Edwards, and Hudgens, as they were under Feld's control and were expected to give live testimony during trial. Feld did not utilize the videotaped deposition during the progression of the case, or during trial, and thus, the Court finds that the videotape depositions were not necessarily obtained for use in the case.

The Court finds that Feld may recover for both the printed transcript and the videotape of the deposition of Poteet, Mulder, DeWitt, Milo Mattarano, Jenkins, Smith. During the trial, Feld utilized the videotape deposition of Jenkins as impeachment, and the Court finds that the other depositions were videotaped in order to be utilized in the same fashion. Although Feld did not use the videotapes during trial, the Court finds they were still "necessarily obtained for use in the case[,]" and thus, Feld may recover the costs.

Traxxas also asserts that Feld cannot recover $4,513.35 of deposition expenses that were used for appearance for the court reporter, Real time fees, shipping and handling, rough drafts, and exhibit scanning (Dkt. #171 at p. 7). Although § 1920 allows recovery of fees for transcripts, it does not allow recovery for shipping and delivery specifically. *See* 28 U.S.C. § 1920. Recovery of incidental expenses related to depositions is generally not recoverable. *Halliburton Energy Servs., Inc. v. M-I, LLC*, 244 F.R.D. 369, 372 (E.D. Tex. June 20, 2007); *see Fogleman*, 920 F.2d at 285; *see also Hoffman v. L&M Arts*, No. 3:10-cv-0953-D, 2015 WL 1000864, at *8 (N.D. Tex. Mar. 6, 2015). "The burden is on the party seeking recovery of costs to show what portion of a particular invoice is recoverable." *Hoffman*, 2015 WL 1000864, at *8 (quoting *Halliburton Energy Servs., Inc.*, 244 F.R.D. at 372). "When the party fails to meet this

burden, the court can disallow all costs and limit the recovering party to the basic transcript charge, where those charges are itemized." *Id.* (quoting *Halliburton Energy Servs., Inc.*, 244 F.R.D. at 372-373). Additionally, "[c]osts for mail services have consistently been disallowed on the grounds that these expenses are only for the convenience of the attorney." *Stoffels v. SBC Comm'ns, Inc.*, No. SA-05-CV-0233-XR, 2012 WL 2122191, at *3 (W.D. Tex. June 11, 2012); *see Mota v. The Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001). The Court finds that the incidental expenses are not recoverable and should not be awarded.

Traxxas also asserts that Feld may not recover $538.70 for overnight transcripts during trial (Dkt. #171 at p. 8). "Trial transcript fees are recoverable upon a showing that they were necessarily obtained for use in the case." *Canion v. U.S.*, No. EP-03-CA-0347-FM, 2005 WL 2216881, at *3 (W.D. Tex. Sept. 9, 2005); *see J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 760 F.2d 613, 615 (5th Cir. 1985). "The extra cost of obtaining expedited transcripts is not taxable 'unless prior court approval of expedition has been obtained or the special character of the litigation necessitates expedited receipt of the transcript.'" *Stoffels*, 2012 WL 2122191, at *2 (quoting *Fogleman*, 920 F.2d at 286). "Absent a showing of necessity, the Court will reduce the taxable costs for these transcripts to whatever the charge would have been on a non-expedited basis. *Id.* Feld did not obtain prior court approval prior to ordering the expedited transcripts. Feld argues that it limited the portions that it requested, and used the portions during its Judgment as a Matter of Law argument and its closing argument (Dkt. #177 at p. 3).[24] The Court will reduce the award for trial transcripts by ten percent and award total costs in the amount of $484.83.

---

[24] Feld cites to the *Canion* case in support of its contention that the expedited fees is recoverable. However, in *Canion*, the court founds that the expedited fees were recoverable to fees the court's deadline to submit the party's findings of fact and conclusions of law at the conclusion of the bench trial. Therefore, the Court finds that the *Canion* case does not apply to present case where Feld ordered an expedited transcript to use during its closing argument.

Traxxas also argues that Feld cannot recover $106.70 for the Virginia hearing transcript (Dkt. #171 at p. 9). Specifically, Traxxas asserts that Feld cannot recover because they "failed to point to any instance where counsel utilized the transcript for trial." (Dkt. #171 at p. 9). The Court finds that Feld may be awarded costs on the Virginia hearing transcript. Feld used the transcript for its motion on consolidation, and therefore, the Court finds that the transcript was necessarily obtained for use in the case.

Therefore, the Court finds that Feld should be awarded the following fees for transcripts and the following should be taxed against Traxxas:

| Expense | Amount |
|---|---|
| Depositions of Stasey, Lake, and Luke Mattarano | $1,658.50[25] |
| Printed and Electronic Depositions | $7,250.00 |
| Expedited Trial Transcript | $484.83 |
| Virginia Hearing Transcript | $106.70 |
| **Total (to be taxed to Traxxas)** | **$9,500.03** |

Traxxas also argues that $4,239.52, which Feld used for printing and copies were unnecessary (Dkt. #171 at p. 9). "Costs of photocopies necessarily obtained for use in the litigation are recoverable upon proof of necessity." *Sieber & Calicutt v. Sphere Drake Ins. Co.*, 2003 WL 470546, at *2 (E.D. Tex. Feb. 21, 2003) (citing 28 U.S.C. § 1920(4); *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994)). "The party seeking costs need not 'identify every xerox copy made for use in the course of legal proceedings.'" *Id.* (quoting *Fogleman*, 920 F.2d at 286). "However, it must demonstrate some connection between the costs incurred and the litigation." *Id.* "Charges for multiple copies of documents, attorney correspondence, and other

---

[25] The Court finds that Feld is entitled to the costs incurred for the video deposition of Luke Mattarano, however, in the invoice presented to the Court, Luke Mattarano's video deposition costs are combined with "P. Smith." Therefore, the Court did not include the video deposition costs of Luke Mattarano when determining the costs Feld was entitled to for the Luke Mattarano deposition. These video deposition cost was included when the Court made its determination as to "Printed and Electronic Deposition" costs.

such items are not recoverable." *Id.* After reviewing the relevant pleadings, the Court finds that Feld incurred costs by producing binders of exhibits for use in depositions and trial; and therefore, the total disputed cost of $4,239.52 should be taxed against Traxxas.

Traxxas also asserts that Feld may not recover $240 in witness fees (Dkt. #171 at p. 10). Specifically, Traxxas disputes six days of reimbursement for Abernethy, in which he acted as the corporate representative (Dkt. #171 at p. 10). Title 28 United States Code § 1821 permits the reimbursement of $40 per day for a witness's attendance a deposition or trial. "[M]any courts have determined [that] the [corporate] representative is entitled to the statutory attendance fee and subsistence allowance provided for witnesses under 28 U.S.C. § 1821, although only for the day or days he appeared as a witness." *Honestech, Inc. v. Sonic Sols.*, 725 F. Supp. 2d 573, 583 (W.D. Tex. 2010); *see Ezelle v. Bauer Corp.*, 154 F.R.D. 149, 154 (S.D. Miss. 1994). Therefore, as Abernethy testified before the Court for three days, he is entitled to three days total of witness reimbursement. Therefore, the Court finds that Traxxas' objection should be sustained, and Feld should not recover the additional $240 in witness fees.

Therefore, the Court finds that Feld should recover the following taxable costs, and those costs should be taxed to Traxxas:

| Expense | Total Amount |
|---|---|
| Undisputed Costs | $20,168.85 |
| Filing Fees | $400 |
| Transcripts | $9,500.03 |
| Printing & Copying | $4,239.52 |
| **Total** | **$34,308.40** |

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Feld Motor Sports, Inc.'s Motion for Attorneys' Fees (Dkt. #164) is hereby **GRANTED IN PART AND DENIED IN PART**. Plaintiff is

awarded $1,074,307.50 in attorneys' fees, and Plaintiff is not awarded any of its non-taxable costs.

It is further **ORDERED** that Feld Motor Sports, Inc.'s Motion for Bill of Costs (Dkt. #167) is hereby **GRANTED IN PART AND DENIED IN PART**.  Plaintiff is awarded its costs in accordance with this order, in the total amount of $34,308.40.

It is further **ORDERED** that Feld Motor Sports, Inc.'s Supplemental Motion for Attorneys' Fees and Expenses (Dkt. #184) is hereby **GRANTED IN PART AND DENIED IN PART**.  Plaintiff is awarded $106,872.34 in attorneys' fees and $2,548.30 in non-taxable costs.

**SIGNED this 12th day of May, 2016.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE